649 A.2d 643

**Ruth B. HARPER and Nicholas B. Moehlmann, Appellants,**

**v.**

**STATE EMPLOYEES' RETIREMENT SYSTEM, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 26, 1994.

Decided Oct. 31, 1994.

---

Elliot A. Strokoff, for Harper and Moehlmann.

Susan J. Forney, for Atty. General's Office.

Martin S. Kauffman, for amicus curiae, Atlantic Legal Foundation, Inc.

Michael K. Hanna, Sr., for amicus curiae, Representatives Hanna 76th Dist., et al.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

PER CURIAM.

This is a direct appeal from an order of the Commonwealth Court which denied Class D–3 membership status in the State Employees' Retirement System (SERS) for the appellants, Ruth B. Harper and Nicholas B. Moehlmann, 154 Pa.Cmwlth. 573, 624 A.2d 279. Appellants are Pennsylvania legislators who initially took office after the March 1, 1974 effective date of the 1974 State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, which eliminated as to all who took office after that date an option to receive Class D–3 pension benefits.

Class D–3 benefits substantially exceed those of the standard Class A benefit package available to most state employees, but require contributions to the pension fund at a rate three and three-quarters times the standard rate. Also, Class D–3 members can obtain early retirement benefits after only six years of service, instead of ten years as required for Class A members.

The 1974 Code did not eliminate Class D–3 benefits for those who took office before March 1, 1974. Although appellants did not take office before that date, they nevertheless filed the present action seeking a summary judgment that they were entitled to Class D–3 membership. Upon a motion for summary judgment by SERS, however, the Commonwealth Court dismissed the action.

Appellants contend that the two-tiered pension system of the 1974 Code unconstitutionally denies legislators uniform and equal treatment with regard to their pension benefits. We do not agree.

Appellants rely heavily upon this Court's decision in *Klein v. State Employees' Retirement System*, 521 Pa. 330,

555 A.2d 1216 (1989), aff'd on reconsideration sub nom. *Goodheart v. Casey*, 523 Pa. 188, 565 A.2d 757 (1989), wherein we held unconstitutional the 1974 Code's two-tiered pension system for the judiciary. In reaching that result we were sharply divided as to rationale. The various rationales employed, as reviewed at length in our opinion upon reconsideration, were that the two-tiered system violated: 1) the express requirement in Article V, § 1 of the Pennsylvania Constitution that there be a unified judicial system;[1] 2) the equal protection guarantees of the Pennsylvania constitution; and 3) a constitutionally-based requirement, see *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210 (1989), that judges be paid adequate compensation.[2] Of these rationales, the first two were advanced by three members of the Court in the opinion announcing the judgment of the court. The third was advanced by Mr. Chief Justice Nix in his concurring opinion, which was joined by two other justices. No single rationale was supported by a majority of the Court.

As applied to the present case involving legislators, two of the three rationales advanced in *Klein* are plainly inapposite, to wit, the requirement of a unified judicial system and the requirement that judges be paid adequate compensation. These rested on constitutional provisions which assured uniformity and independence for the judiciary, and have no application in the context of a pension scheme that applies to legislators.

Although appellants argue that the Pennsylvania legislative system is, in effect, a unified one,[3] there is no explicit "unified legislature" provision in the Pennsylvania Constitution comparable to the "unified judiciary" provision cited by the opinion announcing the judgment of the court in *Klein* as imposing a

1. "The judicial power of the Commonwealth shall be vested in a unified judicial system...." Pa. Const. art. V, § 1.

2. Retirement benefits constitute deferred compensation. *Wright v. Allegheny County Retirement Board*, 390 Pa. 75, 79, 134 A.2d 231, 233 (1957).

3. The General Assembly, consisting of the Senate and House of Representatives, is vested with the legislative power of the Commonwealth. Pa. Const. art. II, § 1.

requirement of uniform compensation. Also, when the legislature has adopted a pension scheme for the judiciary, concerns relating to judicial independence and separation of powers may arise, but where, as here, the issue is whether the legislature has adopted a valid pension plan for itself, similar concerns do not apply. See Pa. Const. art. II, § 8 (legislature establishes compensation for its own members).

With regard to the equal protection rationale, the opinion announcing the judgment of the court stated that "[e]lected public officials similarly situated cannot be paid different compensation when they perform the same functions and exercise the same authority." 521 Pa. at 349, 555 A.2d at 1226. Accordingly, appellants argue that compensation, such as pension benefits, paid to legislators cannot be differentiated in the manner established by the 1974 Code.

Again, it must be noted that the equal protection rationale was followed by only three members of the Court. It was expressly rejected by three justices via Mr. Chief Justice Nix's concurring opinion, and it was implicitly rejected by Mr. Justice McDermott, who dissented. Further, it expressly rested on what were characterized as fundamental interests in the independence and integrity of the judiciary, these being concerns which, as heretofore discussed, do not arise in the present case. In addition, it was merely an alternate rationale for the opinion announcing the judgment of the court, which opinion first rested on a view that the two-tiered pension system violated the constitutional requirement of a unified judicial system.

Thus, the equal protection analysis advanced by appellants has never, in the context of compensation for elected officials, been adopted by a majority of this Court. We believe that the issue was properly addressed in the concurring opinion of Mr. Chief Justice Nix, wherein he stated:

In an Equal Protection analysis, the issue is not a question of the adequacy of the compensation, but rather the legitimacy of the classification. The focus is therefore upon whether the classification is appropriate. The accepted test

is whether or not there is a rational basis for that classification, *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) . . .; *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 145, 477 A.2d 1302, 1306 (1984), unless the classification affects a suspect group or impinges upon a fundamental right. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Clearly, in this case the appropriate standard is rationality.

The right involved here is the right of employment. Specifically it concerns the compensation to be paid for that employment. From Biblical times, it has been recognized that a fair compensation for employment is based upon the amount agreed upon by the employer and the employee at the commencement of the employment relationship. Matthew 20:1–16. In this instance, the rate of compensation was established when the judges in question sought election to the office. Clearly, their action is properly deemed to be an acceptance of the prevailing salary at the time they assumed the office. There is no suggestion, and it would be ludicrous to argue, that they were in any way coerced in making the judgment to seek the office. Therefore, there is no factual basis to support a deprivation that impinges upon a right. Mere dissatisfaction with one's compensation cannot be transformed into a constitutional challenge even though another employee may be receiving greater compensation for similar services.

521 Pa. at 350–51, 555 A.2d at 1226–27 (footnotes omitted).

Applying this reasoning to the present case, we perceive no denial of equal protection in the two-tiered legislative pension scheme. The system was adopted by the legislature as a rational response to concerns raised in a report issued in November of 1972 by the Commonwealth Compensation Commission. The report, issued after an extensive study, cited inequities in the benefits payable under the state's various pension plans and stressed the need for measures to improve the fiscal viability of the pension fund.

The commission reported that pension benefits being provided to legislators were excessive and unjustifiable in comparison with benefits offered to other employees in both the public and private sectors. The legislature responded, in the 1974 Code, by restricting access to the preferential Class D–3 benefit plan for those taking office after March 1, 1974.[4] The legislative benefit plan was thereby brought into line with the Class A plan that had been offered to other state employees. In addition, the fiscal integrity of the fund was enhanced by restricting the number of legislators who would ultimately be entitled to the large payouts associated with the Class D–3 plan.

The classification established by the legislative pension plan serves, therefore, a rational purpose.[5] The requirements of equal protection have been satisfied. Constitutional infirmities addressed by various members of this Court in *Klein*, supra, are not present in the instant classification. Accordingly, the Commonwealth Court properly entered summary judgment in favor of SERS.

Order affirmed.

MONTEMURO, J., is sitting by designation.

---

**4.** Legislators who assumed office under the Class D–3 pension option were permitted to retain their pension status to avoid an unconstitutional impairment of contract. See *Association of State College and University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984) (impairment of contract). Those who took office after March 1, 1974, however, entered under a new and different compensation contract.

**5.** With the passage of time, the pension status of legislators will obviously become uniform. Since all new members of the legislature in the past twenty years have been assigned Class A status, the vast majority of legislators are now similarly situated, and relatively few with Class D–3 status remain.